Stein *v.* Sullivan.

---

---

JOSEPH S. STEIN

*v.*

WILLIAM SULLIVAN and wife and others.

The title of the assignee of a mortgage, whose assignment has been duly recorded, is not affected by a subsequent assignment of the same mortgage by his assignor, who had obtained possession thereof under pretence of collecting the interest on it, to a third party. The record of such assignment was notice to the latter.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. E. A. S. Man,* for complainant.

*Mr. J. H. Jackson,* for answering defendant.

Stein *v.* Sullivan.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage for $1,200 and interest, dated March 28th, 1874, and given by William Sullivan and his wife to John Leffler, by whom it was assigned, by assignment dated on the same day and duly recorded, to Peter Malloy, who, by his assignment dated April 15th, 1876, and recorded May 9th, 1876, assigned it to David M. Koehler as collateral security for any indebtedness he might, after the date of that assignment, contract with Koehler, of whom he proposed to purchase goods on credit. Koehler, by his deed of assignment, dated May 17th, 1878, assigned the mortgage to the complainant. After the assignment to Koehler, and before the assignment by the latter to the complainant, Peter Malloy became indebted to Koehler for goods sold and delivered to him, and, for part of the amount of the indebtedness, gave the latter his three notes, two of which were dated October 3d, 1876, one for $224.40 and the other for $224.00; the former payable at three, and the latter at six months. The other note was for $269.76, was dated January 6th, 1877, and was payable at two months. These notes are wholly unpaid, and the amount of them, with interest from their maturity, is due to the complainant. The only answer in the cause is one put in by Michael Malloy, brother of Peter, who is now the owner of the mortgaged premises, having received the title from Sullivan by deed dated May 11th, 1877. He alleges that he purchased the mortgage in suit from Peter, for $1,200, September 18th, 1876, without notice of the previous assignment by Peter to Koehler, and that Peter then, by assignment of that date, assigned the mortgage to him. It appears that Peter assigned to Koehler, at the same time when he assigned the mortgage in suit, another mortgage of $600, made by one Hennessy, also as collateral security for the payment of future indebtedness. He represented that it was the first mortgage on the property. It proved to be in fact the third. Previously to the 2d of September, 1876, he took that mortgage and the bond

Stein *v.* Sullivan.

which it purported to secure, from Koehler, to collect the interest for the latter. On the day last mentioned he returned them to Koehler and paid him the interest which he professed to have collected from Hennessy. He then asked Koehler to let him have the Sullivan bond and mortgage (that mortgage is the mortgage in suit) for the same purpose, to collect the interest thereon for Koehler. Koehler demurred on the ground that it was not necessary for Malloy to have the bond and mortgage for the purpose, but Malloy said it was, for Sullivan would not pay him unless he had them, and thereupon Koehler delivered the papers to him. Malloy swears that they were not delivered to him for that purpose at all, but were delivered up by Koehler to him because the latter had sufficient security in the $600 mortgage for the indebtedness for which the mortgages were collateral security.

There is not only no corroboration of his testimony on this point, but it is explicitly contradicted by Koehler and also by Sigmund D. Gantz, who was present, and who fully corroborates Koehler. According to the clear weight of evidence Peter Malloy obtained the bond and mortgage from Koehler on pretence of collecting the interest, and then assigned them to his brother Michael as his own property, as they say. Michael testifies that, before taking the assignment, he went to the clerk's office and employed a person there to search the records, and on being informed by him that "it was all right, that everything was clear," he took the assignment, which was drawn, executed and acknowledged there. But at that time the assignment from Leffler, the mortgagee, to Peter Malloy, and the assignment from the latter to Koehler, were on record. The former was recorded March 20th, 1874, and the latter May 9th, 1876. The record was notice to Michael of Koehler's title to the bond and mortgage. The "act concerning mortgages" (*Rev. p. 708* § *32*) provides for the recording of assignments of mortgages of land, and that the record shall be notice, from the time the assignment is left in the office

for record, to all persons concerned, that the mortgage is assigned according to the assignment. Michael therefore had notice, when he took the assignment, that Koehler was the owner of the mortgage by assignment. But it is urged that the mortgage was assignable by mere delivery, without writing, and therefore Michael might assume that Peter was the owner of it from his possession and claim of ownership. It is difficult to see what protection the act just referred to would afford if, notwithstanding its provisions, the mere fact that a person has the mortgage in his possession and fraudulently claims to own it, is sufficient to give to one who buys it from him a valid title as against the real owner, whose title to it is on record. The law imposed upon Michael the duty of examining the records to ascertain whether Peter was the owner of the mortgage, and Koehler was protected in his ownership of the mortgage by the record of his assignment.

Michael holds the equity of redemption. There is therefore no necessity for providing for the right which he would have had under his assignment if he were not the owner of the equity. In that case he would have been entitled to the benefit of the mortgage after paying the complainant's claim and costs.

The title of the complainant to the mortgage was attacked on the hearing on the ground that he is not the *bona fide* assignee of the mortgage for value, but holds it by an assignment merely voluntary. It appears by Koehler's testimony that the complainant gave value for the mortgage. But if he had given nothing for it, that fact would not affect his title in this suit.

There will be a decree for the complainant.